# EXHIBIT A

Electronically Filed
1/26/2018 3:27 PM
Steven D. Grierson
CLERK OF THE COURT

1 | **COM**
Michael P. Balaban   State Bar No. 9370
2 | LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
3 | Las Vegas, NV 89141
(702)586-2964
4 | Fax: (702)586-3023

5 | Attorney for Plaintiff

6

7

8

9 | DISTRICT COURT

10 | CLARK COUNTY, NEVADA

11

| | |
|---|---|
| RYAN JOSEPH; RICKEY OSWALD; and DENNIS LELAND, | CASE NO.   A-18-768627-C |
| | DEPT NO.   Department 24 |
| | COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED UPON: |
| Plaintiff, | |
| vs. | 1. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY |
| | 2. WRONGFUL DISCHARGE FOR REFUSING TO ENGAGE IN ILLEGAL/UNETHICAL CONDUCT |
| THE BERKELEY GROUP, LLC, dba NV JETS, a Nevada Limited Liabiltity Company; and DOES 1 through 20, inclusive, | 3. FOR VIOLATION OF FLSA AND NRS 608, ET SEQ. |
| | 4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| Defendants. | *EXEMPT FROM ARBITRATION- AMOUNT IN CONTROVERSY OVER $50,000.00* |

RYAN JOSEPH, RICKEY OSWALD, and DENNIS LELAND (hereinafter collectively "Plaintiffs" or individually, "Joseph", "Oswald" or "Leland") allege as follows:

///

///

///

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

1.     Plaintiffs Joseph, Oswald and Leland are individuals and who now, and at all times mentioned in this complaint were residents of City of Las Vegas, County of Clark and State of Nevada.

2.     Defendant THE BERKELEY GROUP, LLC, dba NV JETS ("Defendant", "NV Jets" or "Defendant NV Jets") is now, and at all times mentioned in this complaint was a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in the City of Las Vegas, County of Clark, State of Nevada.

3.     Plaintiff does not know the true names of Defendants, DOES 1 through 20, inclusive, and they therefore are sued by such fictitious names. Plaintiff is informed and believes that each DOE Defendant is legally responsible, along with named Defendant for the wrongs complained of herein. This Complaint will be amended to more fully state allegations as to DOE Defendants, once that information is obtained.

4.     Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned each Defendant was the partner, agent, co-conspirator, and/or employee of its co-Defendants, and in doing the things alleged in this Complaint, each was acting within the course and scope of any such partnership, conspiracy, agency, and/or employment.

5.     The events or omissions giving rise to Plaintiff's claim occurred in this Judicial District, thus venue is proper for this District Court to hear and decide the matter.

## STATEMENT OF FACTS

6.     Defendant NV Jets provides private chartered jets transportation based out of the McCarran International Airport in Las Vegas, Nevada.

7.     Joseph was hired by NV Jets on or about September 2, 2015 as a Captain and resigned on or about January 28, 2016.

8.     Oswald was hired by NV Jets on or about March 17, 2015 as Chief Pilot and also resigned on or about January 28, 2016. As Chief Pilot under Part 135 of the Federal Acquisition

Regulation ("FAR") Oswald was responsible for Operational Control of all flights conducted under FAR Part 135. Operational Control is the authority of initiating, conducting or terminating a flight.

9.     Leland was hired by NV Jets in September 2011 as Pilot and resigned on or about July 26, 2016.

10.     All three Plaintiffs resigned their employment with NV Jets because of Defendant's illegal and unethical conduct which violated public policy and continuing to be employed by NV Jets could have cost them their pilot licenses or worse.

11.     This included flying aircraft that were not airworthy because they failed to meet Minimum Equipment List ("MEL") requirements, Federal Aviation Administration ("FAA") and FAR regulations or GOM requirements. They also had Transportation Security Administration ("TSA") violations and violations of the Nevada Revised Statutes ("NRS").

12.     For example on October 14, 2015, Trip# 2845, tail number N21NV, Lyn-Michael Gerber pushed the circuit breaker on the plane back in after the circuit breaker was pulled and collared in violation of MEL requirements.

13.     On November 20, 2015, Leland was yelled and screamed at and berated by Gerber. The flight was from LAS-BUR where four passengers were to be picked up and transferred back to LAS. On arrival it was found out that there were now seven passengers whom had to be transported back to LAS and thus several actions had to be taken to make sure the aircraft stayed within weight restrictions.

14.     While on the aircraft fueling the plane according to directions from Gerber, Gerber for no apparent reason started yelling and screaming at Leland to exit the aircraft and even forcibly pushed Leland up against the side of the aircraft. After then being told to "get back on the plane and do your fucken job", Leland called Oswald and told him about Gerber's conduct. Oswald told Leland to remain professional and the flight from BUR-LAS, although considerably delayed, was completed without further incident.

3

15.     On December 10, 2015, Trip# 2917, tail number N21NV (SBA-ORL), was in violation of FAR regulations. Oswald as Chief Pilot was responsible for Operational Control over the flight, contacted Gerber to inform him that the life raft had not been on board the aircraft for the flight down to Florida and that the aircraft's route of flight on the return leg needed to be planned to not exceed the FAR requirement of more than 50nm from the shoreline in order to safely and legally conduct the flight under Part 135. This would require a fuel stop and Gerber stated that the NV Jets needed to conduct the flight nonstop in order to not add any additional costs to the company. Gerber did not listen to Oswald and the flight was flown right back over the Gulf of Mexico exceeding the 50nm from shoreline requirement by FAR, thus needing to have a life raft on board.

16.     On December 19, 2015, Trip# 2926, tail number N21NV (SAN-LAS), was operated with the Radio Transceiver Unit being non-operational. Gerber was the Pilot in Command and Oswald had Operational Control over the flight and told Gerber to not depart until the aircraft was inspected and signed off by an authorized mechanic. Gerber ignored Oswald and departed without the aircraft being inspected, repaired and signed off on. Thus the aircraft was operated illegally by Gerber and NV Jets under Part 135.

17.     On December 28, 2015, Trip# 2935, tail number N21NV, Oswald was informed of damage to the Angle of Attack ("AOA") scale and as acting Chief Pilot, Oswald was responsible for releasing the fight under Part 135. Oswald instructed Gerber, the Pilot in Command, not to operate the flight until Oswald had spoken to Director of Maintenance John Mangum. Although Oswald and Mangum felt the aircraft had to be inspected before conducting a Part 135 flight with passengers on board, Gerber disregarded this advice and conducted flights from JAC-COE-AVQ-LAS anyway.

18.     Oswald took it upon himself to ask the FAA to allow him to implement a Plan of Corrective Action to correct and help avoid any similar events from happening in the future. The FAA agreed to allow NV Jets to handle the matter in house but Oswald received no cooperation in

1    implementing the Plan of Corrective Action from Defendant.

2        19.    Also under the TSA 12.5 security program an approved person has to verify all

3    passenger names against the TSA No-Fly List, selectee list, and cleared list. At NV Jets the

4    person who was supposed to do this was Josh Kirkland. Kirkland never ran a TSA check on any

5    passengers while Oswald was employed at NV Jets. Instead Karen Penly, who was not approved

6    to do the check nor is a United States citizen, performed all the TSA passenger screenings using

7    Kirkland's account and login. This provided a severe security threat and was a violation under the

8    Homeland Security Act.

9        20.    In addition, Plaintiffs were forced to falsify OSHA safety reports in order for the

10   company to report higher safety standards to the public.

11       21.    Plaintiffs were also forced to fly with less than 10 hours of FAA mandated rest

12   between flights and then told to falsify their FAA duty logs to cover up the fact that they did not

13   receive the mandatory rest periods.

14

15       22.    Further Plaintiffs were forced to fly planes in violation FAA Part 135 which

16   mandated that the pilots perform runway analysis on the intended airports and runways which they

17   are flying to. On one occasion in particular Joseph was told by Gerber to over fuel an aircraft in

18   violation of performance data and then land the aircraft in Salt Lake, Utah in inclement weather

19   conditions.

20       23.    When Joseph refused to do this because it was in violation of FAA regulations and

21   the aircraft could have crashed if one of the engines failed, Gerber got mad at Joseph and said you

22   need to act as a team player and tried to convince Joseph to falsify the runway

23   analysis/performance data so that it would conform to FAA regulations.

24       24.    Further when flights had to be canceled because of inclement weather or a limited

25   performance profile for an aircraft, extremely harsh and threatening remarks were made to the

26   Plaintiffs about the cancellations.

27       25.    Gerber also told Joseph on at least one occasion, that "this is not a big company and

28

5

1  we need every plane possible to make on demand flights so we can stay in business."  Joseph
2  interpreted this statement as putting financial considerations ahead of safety concerns which
3  neither Joseph nor the other Plaintiffs would adhere to.

4      26.    Ultimately the continued violation of MEL requirements, FAA regulations, FAR
5  regulations and other violations set forth above forced all the Plaintiffs to resign their respect
6  employment with NV Jets to seek other opportunities with companies which did not violate the
7  law, act unethically and observed reasonable safety standards.  Their resignations were reasonable
8  under the circumstances because of the real possibly that they could have lost their pilot licenses
9  or worse if something was to happen.

10
## FIRST CAUSE OF ACTION

11
### (For Wrongful Discharge in Violation of Public Policy)

12      27.    Plaintiffs Joseph, Oswald and Leland incorporate the allegations set forth in
13
14  paragraphs 1 through 26, inclusive, as if fully set forth herein.

15      28.    As set forth above Defendant flew aircraft that were not airworthy because they
16  failed to meet MEL requirements, FAA regulations, FAR regulations or GOM requirements.
17  They also had TSA violations and violations of the NRS.

18      29.    The public policy behind these laws is to protect the flying public from aircraft which
19  are not airworthy and might result in a crash.

20      30.    Plaintiffs brought these violations of the various laws, regulations and requirements
21  set forth above to Defendant's attention on many occasions, including but not limited what is set forth
22  above.

23      31.    Oswald even took it upon himself to inform the FAA of these and other violations
24  and was allowed by the FAA to implement a Plan of Corrective Action but got no cooperation from
25  NV Jets in its implementation.

26      32.    Finally because of the lack of commitment of Defendant to do something about the
27  violations of the laws, regulations and requirement set forth above, Plaintiffs were forced to resign
28

1  their employment with NV Jets.

2      33.    This was reasonable under the circumstances because Plaintiffs risked losing their
3  pilot licenses or worse had they continued their employment with NV Jets and something
4  happened.

5      34.    Plaintiffs believe, allege, and will prove at trial that they were constructively
6  terminated in violation of fundamental public policies of the State of Nevada and the United States
7  of America, including in retaliation for insisting that NV Jets comply with federal law and state
8  law including MEL requirements, FAA regulations, FAR regulations, GOM requirements, TSA
9  regulations and the NRS.

10      35.    As a direct, foreseeable, and legal result of the Defendant's retaliation and
11  constructive discharge of Plaintiffs, Joseph, Oswald and Leland have suffered and continue to
12  suffer, substantial losses in earnings, bonuses, job benefits and expenses, in an amount to be
13  proven at trial which has a probable jury award value in excess of $50,000 exclusive of interest
14  and costs.

16      36.    As a further direct, foreseeable, and legal result of the Defendant's retaliation and
17  constructive discharge of Plaintiffs, Plaintiffs have suffered indignity, mental anguish,
18  humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression,
19  inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not
20  fully known at this time, for which they seek damages in a sum according to proof at trial.

21      37.    In acting as they did, Defendant knowingly, willfully, and intentionally acted in
22  conscious disregard of Plaintiffs' rights. Their conduct was despicable, has subjected Plaintiffs to
23  oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiffs, in a
24  sum according to proof at trial.

25      38.    Plaintiffs claim the damages alleged herein, together with prejudgment interest as
26  provided by law, in a sum according to proof at trial.

27      39.    Plaintiffs have incurred, and continue to incur, attorney's fees in the prosecution of

28

their claims. Plaintiffs therefore seek an award of reasonable attorney's fees, in a sum according to proof at trial.

## SECOND CAUSE OF ACTION

### (For Wrongful Discharge for Refusing to Engage in Illegal/Unethical Conduct)

40.     Plaintiffs Joseph, Oswald and Leland incorporate the allegations set forth in paragraphs 1 through 39, inclusive, as if fully set forth herein.

41.     As set forth above Defendant flew aircraft that were not airworthy because they failed to meet MEL requirements, FAA regulations, FAR regulations or GOM requirements. They also had TSA violations and violations of the NRS.

42.     Plaintiffs brought these violations of the various laws, regulations and requirements set forth above to Defendant's attention on many occasions, including but not limited what is set forth above.

43.     Oswald even took it upon himself to inform the FAA of these and other violations and was allowed by the FAA to implement a Plan of Corrective Action but got no cooperation from NV Jets in its implementation.

44.     Finally because of the lack of commitment of Defendant to do something about the violations of the laws, regulations and requirement set forth above, Plaintiffs were forced to resign their employment with NV Jets so they would not have to continue to be part of a company which engaged in illegal and unethical conduct.

45.     This was reasonable under the circumstances because Plaintiffs risked losing their pilot licenses or worse had they continued their employment with NV Jets and something happened.

46.     Defendant's decision to constructively discharge Plaintiffs, including in retaliation for refusing to engage in illegal or unethical conduct in violation of state and federal law, was wrongful and in violation of fundamental public policies of the State of Nevada and the United States of America.

8

47.     Plaintiffs believe, allege, and will prove at trial that they were constructively terminated for refusing to engage in illegal or unethical conduct, including in retaliation for insisting that NV Jets comply with federal law and state law including MEL requirements, FAA regulations, FAR regulations, GOM requirements, TSA regulations and the NRS.

48.     As a direct, foreseeable, and legal result of the Defendant's retaliation and constructive discharge of Plaintiffs, Joseph, Oswald and Leland have suffered and continue to suffer, substantial losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which has a probable jury award value in excess of $50,000 exclusive of interest and costs.

49.     As a further direct, foreseeable, and legal result of the Defendant's retaliation and constructive discharge of Plaintiffs, Plaintiffs have suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which they seek damages in a sum according to proof at trial.

50.     In acting as they did, Defendant knowingly, willfully, and intentionally acted in conscious disregard of Plaintiffs' rights. Their conduct was despicable, has subjected Plaintiffs to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiffs, in a sum according to proof at trial.

51.     Plaintiffs claim the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

52.     Plaintiffs have incurred, and continue to incur, attorney's fees in the prosecution of their claims. Plaintiffs therefore seek an award of reasonable attorney's fees, in a sum according to proof at trial.

## THIRD CAUSE OF ACTION

### (For Violation of the FLSA and NRS 608, et seq.)

53.     Plaintiffs Joseph, Oswald and Leland incorporate the allegations set forth in

9

1  paragraphs 1 through 52, inclusive, as if fully set forth herein.

2        54.     Defendant regularly engaged in commerce and its employees handled and used goods

3  which have moved in interstate commerce and thus is subjected to the provisions of the FLSA.

4        55.     Plaintiffs at all relevant times were employees of Defendant, as defined by *29 U.S.C.*

5  *§ 203(d)* and *NRS 608.010.*

6        56.     During the period of time that Plaintiffs were employed by NV Jets, Plaintiffs

7  performed work for which they were not compensated for in an amount to be proven at trial in

8  violation of the FLSA and *NRS 608.016*.

9        57.     In addition, from time to time, Plaintiffs were required to work over forty hours per

10  week.

11        58.     *FLSA §207(a)(1)* and *NRS 608.018* requires an employer to pay its employees at a

12  rate of at least one and one-half their regular rate for time worked in one work week over forty

13  hours. This is commonly known as the time-and-a-half pay for overtime work.

14

15        59.     Despite working overtime, Plaintiffs were not paid time and one-half pay from NV

16  Jets for overtime worked in an amount to be proven at trial in violation of the *FLSA §207(a)(1)* and

17  *NRS 608.018*.

18        60.     *NRS 608.019(1)* provides that an employer must give an employee a one half hour

19  meal period for every eight hours worked.  Further *NRS 608.019(2)* provides that an employer

20  must give an employee a rest period of at least ten minutes for every four hours worked.

21        61.     During the period of time that Plaintiffs were employed by NV Jets, Plaintiff worked

22  numerous days of over eight hours without any meal period or rest periods to be proven at trial in

23  violation of the *NRS 608.019(1) and (2)*.

24        62.     In addition Plaintiffs were not paid for their per diem daily expenses, other

25  expenses, training cost reimbursements, performance bonuses and increases, other wages

26  including Joseph not being paid his final pay check and other amounts to be determined.

27        63.     Finally *NRS 608.040(1)* provides that if an employer does not pay an employee all

28

1   the wages and compensation they are owed within 72 hours of when they resign, the wages and

2   compensation continue at the same rate from 72 hours of when they resign, until paid or for 30

3   days, whichever is less.

4       64.     Plaintiffs were not paid all the wages and compensation they were owed within 72

5   hours of when they resign and thus are owed a penalty pursuant to *608.040(1)* in an amount to be

6   proven at trial.

7       65.     As a direct and proximate result of Defendant violating the FLSA, Plaintiffs have

8   suffered loss of income, including but not limited to loss of past wages, benefits, expenses,

9   reimbursement and other damages to be proven at trial.

10      66.     Defendant's actions were with deliberate indifference to such right or were willful,

11  entitling Plaintiffs to an award of liquidated damages equal to double the amount of their actual

12  damages pursuant *29 USC §§216(b)* and *626(b)*.

13

14      67.     Plaintiffs have incurred, and continue to incur, attorney's fees in the prosecution of

15  their claims.  Plaintiffs therefore seek an award of reasonable attorney's fees, in a sum according to

16  proof at trial.

17                          **FOURTH CAUSE OF ACTION**

18      **(Intentional Infliction of Emotional Distress by Joseph only against NV Jets)**

19      68.     Joseph incorporates the allegations set forth in paragraphs 1 through 67, inclusive,

20  as if fully set forth herein.

21      69.     During the time he was employed with Defendant, Joseph, who is of Lebanese and

22  African American decent, had to endure racial and ethnically discriminatory comments by various

23  staff at NV Jets.

24      70.     In or about November 2015, Hangar Manager Josh Kirkland used the word

25  "nigger" in more than one conversation with him and one time told Joseph "not to be such a

26  nigger…"

27      71.     In another incident in or around December 2015 which occurred at a company

28

11

meeting, Gerber used ethnic slurs towards Middle Eastern people by calling them "camel jockeys", "camel goat fuckers" and "rag heads" while discussing TSA bomb threat phone call scenarios.

72. These comments were discriminatory and harassing to Joseph because of his race and national origin and constitute extreme and outrageous conduct which was intended to cause severe emotional distress to Joseph.

73. Defendant's actions did in fact cause severe emotional distress to Joseph, including but not limited to, indignity, mental anguish, humiliation, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life, the extent of which is not fully known at this time, for which he seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

74. In acting as they did, NV Jets did knowingly, willfully, and intentionally acted in conscious disregard of Joseph's rights. Defendant's conduct was despicable, has subjected Joseph to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

75. Joseph claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

76. Joseph has incurred, and continues to incur, attorney's fees in the prosecution of his claims. Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Joseph, Oswald and Leland demand judgment against Defendant NV Jets as follows:

1. For back pay and front pay for substantial losses in earnings, bonuses, job benefits and expenses in an amount to be proven at trial which has a probable jury award value in excess of $50,000 exclusive of interest and costs;

1        2. For liquidated damages under the FLSA in an amount equal to double the amount of

2    their actual damages;

3        3. For compensatory damages for mental and emotional distress, worry, indignity, mental

4    anxiety, mortification, depression, shame, grief, inconvenience and loss of enjoyment of life and other

5    pecuniary losses, all to Plaintiffs' damage in a sum to be shown at the time of trial;

6        4. For punitive damages;

7        5. For attorney's fees and costs in an amount determined by the court to be reasonable;

8        6. For pre-judgment interest on all damages; and

9        7. For any other and further relief that the Court considers proper.

10

11   DATED: 1/26/2018                 LAW OFFICES OF MICHAEL P. BALABAN

12

13                          BY: /s/ Michael P. Balaban

14                          Michael P. Balaban, Esq.
                       LAW OFFICES OF MICHAEL P. BALABAN

15                          10726 Del Rudini Street
                       Las Vegas, NV 89141

16

17

18

19

20

21

22

23

24

25

26

27

28

13

# EXHIBIT B

Electronically Issued
1/30/2018 12:29 AM

**SUMM**
Michael P. Balaban  State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10725 Del Rudini Street
Las Vegas, Nevada 89141
(702)586-2964
Fax: (702)586-3023

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

RYAN JOSEPH; RICKEY OSWALD; and
DENNIS LELAND,

                   Plaintiff,

    vs.

THE BERKELEY GROUP, LLC, dba NV
JETS, a Nevada Limited Liabiltiy
Company; and DOES 1 through 20,
inclusive,

                   Defendants.

CASE NO.    A-18-768627-C

DEPT. NO.   Department 24

**SUMMONS - CIVIL**

NOTICE!  YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.
READ THE INFORMATION BELOW.

TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against

you for the relief set forth in the Complaint.

    1.    If you intend to defend this lawsuit, within 20 days after this Summons is

        served on you, exclusive of the day of service, you must do the following:

            (a) File with the Clerk of this Court, whose address is shown below, a